NOT FOR PUBLICATION OR CITATION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE

CIVIL ACTION NO. 05-CV-186-KKC

MONROE L. COLEMAN-BEY                                                                PETITIONER

VS:                              **MEMORANDUM OPINION AND ORDER**

S. R. HASTINGS, Warden                                                               RESPONDENT

\* \* \* \* \*

Monroe L. Coleman-Bey, an individual who was convicted and sentenced in the District of Columbia and is presently confined in the custody of the Federal Bureau of Prisons, at the United States Penitentiary-Big Sandy in Inez, Kentucky, has filed another *pro se* petition for a writ of habeas corpus, pursuant to 28 U.S.C. §2241,[1] and he has paid the $5.00 habeas filing fee.

This matter is before the Court for screening. 28 U.S.C. §2243; *Demjanjuk v. Petrovsky*, 612 F. Supp. 571 (N.D. Ohio 1985) (citing *Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970), *cert. denied*, 400 U.S. 906 (1970); *accord Aubut v. State of Maine*, 431 F.2d 688, 689 (1st Cir. 1970)).

CLAIMS

The petitioner claims that the Bureau of Prisons ("BOP") has wrongly denied him a lower security classification, a decision which (1) is unfair, arbitrary, irrational, and violates due process; (2) is so biased against D.C. felons as to violate the equal protection provisions of the U.S. Constitution; (3) amounts to cruel and unusual punishment; (4) constitutes an *ex post facto*

---

[1] In the past eight (8) months, the petitioner has filed five (5) habeas proceedings, three (3) duplicative §2254 petitions (Case Numbers 05-CV-158-DCR; 05-CV-162-DLB; 05-165-DCR), and two (2) §2241 petitions. His previous §2241 petition (No. 04-CV-446-KKC) was denied, *sua sponte*, by this Court on March 24, 2005 [Record No. 3], and the petitioner has filed a notice of appeal of that decision.

punishment; (5) violates the National Capital Revitalization and Improvement Act of 1997; and (6) was decided contrary to D.C. Corrections Classification Operations Manual 4090.3.

## ALLEGATIONS

In the petitioner's earlier §2241 proceeding, wherein he challenged the BOP's calculation of good time and other credits toward his sentences, he provided a brief history of his incarceration, which this Court summarized as follows:

> The petitioner states that he was arrested and placed in the District of Columbia Detention Center, once in 1983 for possession of heroin with intent to distribute and again in 1984-85; and he is currently serving the sentence handed down at the end of those proceedings. Now having been incarcerated for almost twenty (20) years, during which time he has completed several BOP programs, the petitioner alleges that he has sought and been denied credits toward service of that sentence, credits to which he is purportedly entitled under District of Columbia law
> . . . .
> . . . .
> In Remedy No. 315262, begun in the fall of 2003 [and subsequently exhausted], the petitioner wrote to the warden, making his request for "statutory, educational, and industrial good time to be applied toward the minimum sentence imposed by the sentencing court." In his response, the warden first traces the two different sentences handed down in the Superior Court of District of Columbia. In Case No. F1258-85, on January 27, 1986, the petitioner was sentenced to an aggregated term of 32 years to life, which included a 20-year mandatory minimum term on Count H for First Degree Murder While Armed, ordered to be served consecutively to any other sentence. A month later, on February 25, 1986, in the second case, No. F5575-83, the court sentenced Coleman-Bey to 12 to 36 years, also to be served consecutively. The two amount to 44 years to life, and service thereon was begun on January 27, 1986.

Record No. 3 at 2-3. The petitioner does not repeat this background in the instant petition. The following is a summary or construction of the petitioner's allegations herein, as made in his 50-page handwritten petition and/or attachments thereto.

The petitioner claims that he has repeatedly been denied opportunities to better himself

2

through prison educational and spiritual programs because of his custody classification. The BOP's classification calls for him to be kept in High Security institutions and since 1986 has disqualified him for transfer to other institutions which have programs desirable to him, despite his being a good prisoner and having successfully completed other programs. The petitioner challenged several aspects of the custody classification and appealed through the BOP administrative remedy process at least twice.

In Remedy No. 359574, the petitioner voiced his desire to attend a "Spiritual Life Connection Program" at the Federal Correctional Institution (FCI) in Victorville, in California, and the attached documents from that effort show that he argued to the BOP that the "Public Safety Factors Classification Scoring System" violates the ex post facto clause; is arbitrary; discriminates against D. C. prisoners, including him; and is contrary to the mandatory language in the D.C. Revitalization Act of 1997. The petitioner does not, however, attach the BOP responses, except for that of the then-warden, who indicates that the petitioner was permitted to apply to the desired program. There is no indication that the petitioner pursued the matter to exhaustion, *i.e.*, no allegation or evidence of an appeal to the national office of the BOP.

In Remedy No. 359573, Petitioner Coleman-Bey began the administrative process by writing to his case manager and requesting removal of the greatest severity offense and sentence length "Public Safety Factor" (PSF). The manager, Ms. Greene, responded that "an inmate with more than 30 years remaining to serve (including non-parolable life sentences) shall be housed in a High Security Level Institution." Attachment, dated December 2, 2004. The petitioner pursued this matter through the BOP administrative remedy program to exhaustion, complaining, *inter alia*, that he was "constantly and continuously told" that BOP policy does not permit a D.C. prisoner who is

3

serving a life sentence to be considered for a program at an FCI. He argued, however, that there was no such policy and that the refusal to change his classification and deny him programs was a "discriminatory practice." The attached response from the national office contains the BOP's position:

> . . . The application of PSFs is left to the discretion of the Warden and the Regional Director per Program Statement 5100.07, <u>Security Designation and Custody Classification Manual</u>. This P.S. states that a male inmate with more than 30 years remaining to serve (including non-parolable LIFE sentences) shall be housed in a High security level institution unless the PSF has been waived. P.S. 5100.07 also states the Greatest Severity PSF shall be applied when an inmate's current offense falls into the Greatest Severity range according to the Offense Severity Scale. P.S. 5100.07 further stipulates that an inmate whose current offense involves any Robbery, Assault, Homicide or Voluntary Manslaughter shall be scored in the Greatest Severity category.
>
> Records indicate you are serving a Life sentence for Robbery While Armed, First Degree Murder While Armed, and Assault with Intent to Commit Robbery While Armed. Accordingly, we find the PSFs for Greatest Severity Offense and Sentence Length were appropriately applied. Staff have reviewed your case and determined a waiver of your PSFs are not warranted at this time. You are a High Security Level inmate assigned In custody appropriately confined at USP Big Sandy. Staff will continue to review your case during regularly scheduled program reviews. Therefore, we find the Warden's decision to deny your request for waiver of your PSFs to be within his discretion, and in accordance with policy as P.S. 5100.07 does not require the Warden to request waiver of a PSF.

Attachment dated April 4, 2005. Other attached documents show the BOP's classification calculation and contain handwritten notes that the petitioner's classification will be reviewed again when the petitioner receives a release date.

The petitioner claims that not waiving the PSF is unfair and that the BOP's P.S. 5880.3 at chapter 8 does not pertain to him, because he was acquitted of premeditated murder and carrying a pistol without a license, in essence reducing him to being only an aider or abettor. He also asks how the BOP can "arbitrarily change the life [sentence] to 540 months" as the sentence is reflected in the

4

BOP's calculation of his custody classification level. Additionally, when he was incarcerated by the D. C. Department of Corrections, he purportedly qualified for medium, not high, custody so long as his behavior was not a problem; he should not have suffered the BOP's arbitrarily raising that classification to High; by a contract between the D. C. government and prison officials, he is entitled to be housed in a facility which is within 500 miles of D. C. and offers the self-improvement course(s) which he seeks.

The petitioner asks the Court to provide monitors to review the circumstances of D. C. prisoners at USP-Big Sandy; require the BOP to stop being unfair with D. C. prisoners; direct that D. C. prisoners be given opportunities for transfer to lower security facilities; and order the BOP to waive the PSF entirely and transfer the petitioner to the BOP's facility in Petersburg, Virginia, for the Life Connection Program.

## DISCUSSION

Federal prisoners are required to exhaust administrative remedies before filing a habeas corpus petition under 28 U.S.C. §2241. *See Gonzalez v. United States*, 959 F.2d 211, 212 (11th Cir. 1992) (per curiam); *Tucker v. Carlson*, 925 F.2d 330, 332 (9th Cir. 1991); *Little v. Hopkins*, 638 F.2d 953, 953-954 (6th Cir. 1981) (per curiam); *Hardwick v. Ault*, 517 F.2d 295, 296 (5th Cir. 1975). Moreover, exhaustion of administrative remedies should be implemented to prepare a record. *See Brice v. Day*, 604 F.2d 664 (10th Cir.), *cert. denied*, 444 U.S. 1086 (1980).

The administrative remedies available to inmates confined in Bureau of Prisons institutions are set out at 28 C.F.R. §§542.10-.19 (1998). Section 542.13(a) demands that an inmate first informally present his complaint to the staff, thereby providing them with an opportunity to correct the problem, before filing a request for an administrative remedy. If the inmate cannot informally

resolve his complaint, then he may file a formal written request to the Warden. *See* §542.14(a). If the inmate is not satisfied with the Warden's response, he may appeal to the Regional Director, and, if not satisfied with the Regional Director's response, the inmate may appeal that decision to the Office of General Counsel. *See* §542.15.

In the case *sub judice*, Petitioner Coleman-Bey has demonstrated exhaustion of the administrative remedy process on only one issue: the BOP's denying him a waiver of his PSF in order to qualify him for a lesser security rating and thus placement in a lower security institution offering the course he wishes to take. Therefore, only the waiver issue is before this Court on the merits. In support of his entitlement to a waiver, however, the petitioner offers only argument. He offers no legal authority for his purported right to an SPF waiver and entry into a lesser security institution's programs. Nor does the petitioner counter the BOP's position, as it was presented in the response of the BOP national office, that PSF waivers are totally discretionary.

To the extent the plaintiff relies on the Due Process Clause, the Constitution, itself, does not confer any right upon an inmate to any particular custody or security classification. *Moody v. Daggett*, 429 U.S. 78 (1976); *Montanye v. Haymes*, 427 U.S. 236, 242 (1976). The Constitution does not confer inmates a liberty interest in retaining or receiving any particular security or custody status "[a]s long as the [challenged] conditions or degree of confinement is within the sentence imposed . . . and is not otherwise violative of the Constitution." *Hewitt v. Helms*, 459 U.S. 460 at 468, 103 S. Ct. 864 at 869 (1983). The Due Process Clause, alone, only requires that inmates' conditions of confinement be consistent with their sentence. *Id.* at 468, 103 S. Ct. at 869-70. In short, prisoner classification in federal prisons is not directly subject to due process protections. *Bulger v. U.S. Bureau of Prisons*, 65 F.3d 48 (5th Cir. (Tex.) 1995).

Moreover, if the Constitution did confer upon an inmate the right to particular circumstances of custody, under *Sandin v. Conner*, 115 S.Ct. 2293 (1995), he has no due process claim about it because his "transfer to less amenable quarters for nonpunitive reasons [is] 'ordinarily contemplated by a prison sentence.'" *Id.* at 2298 (quoting *Hewitt v. Helms*, 459 U.S. 460, 468 (1983)). In the case *sub judice*, the change medium to high or vice versa does not "present the type of atypical, significant deprivation in which" there might conceivably be a liberty interest. *Id.* at 2301.

Any due process claim predicated on an alleged protected liberty interest in a particular security classification, therefore, fails to state a claim upon which relief can be granted. *Meyer v. Reno*, 911 F. Supp. 11, 17 (D.D.C., 1996)(citing, accord *Knox v. Lanham*, 895 F. Supp. 750, 759 (D. Md. 1995) "(observing, without deciding, that, under *Sandin*, inmates do not have a protected liberty interest in remaining in their particular security classifications)." *Id.*

Specifically with regard to the BOP, "[t]here is no per se due process interest involved regarding an inmate's classification in the Central Inmate Monitoring System. *Pugliese v. Nelson*, 617 F.2d 916 (2d Cir. 1980). Furthermore, the Central Inmate Monitoring System regulations do not restrict the Bureau of Prison's discretion in classifying an inmate as a Central Inmate Monitoring System case. Therefore, there is no due process interest created by the regulations. *Olim v. Wakinekona*, 461 U.S. 238, 75 L. Ed. 2d 813 (1983)" *Coleman v. Cain*, 1991 W.L. 104371 (D. Kan. 1991) (not reported).

Moreover, under the circumstances of this case, to find a liberty interest in the classification and custody level challenged herein would be to involve the judiciary in "the day-to-day functioning of . . . prisons . . . [and] . . . issues and discretionary decisions that are not the business of federal

7

judges." *Meachum v. Fano*, 427 U.S. 215, 228-29 (1976).

Furthermore, it must be remembered that the purported objects of the petitioner's desires, rehabilitation opportunities, have not been deemed to be a constitutional right, but rather a privilege. *Green v. United States*, 481 F.2d 1140 (D.C. Cir. 1973); *Preston v. Ford*, 378 F. Supp. 729, 730 (E.D. Ky. 1974); *United States v. Pate*, 229 F. Supp. 818, 819 (N.D. Ill. 1964); *Mercer v. United States Medical Center for Federal Prisoners*, 312 F. Supp. 1077, 1079 (W.D. Mo. 1970).

Due process has another component, which the Court has also considered. "As a matter of current constitutional law, there are contexts in which it is widely believed that one's substantive due process rights may be violated by conduct that "shocks the conscience"...and offends "those canons of decency and fairness which express the notions of justice of English-speaking peoples even toward those charged with the most heinous offenses." *Newell v. Brown, Jr., et al.*, 981 F.2d 880 (6th Cir. 1992), *cert. denied*, 114 S. Ct. 127 (1993) (citing *Rochin v. California*, 342 U.S. 165 (1952) (quoting *Malinski v. New York*, 324 U.S. 401, 416-17 (1945)); *Cf. Mertik v. Blalock, et al.*, 983 F.2d 1353, 1367-68 (6th Cir. 1993); *Wilson v. Beebe*, 770 F.2d 578, 586 (6th Cir. 1985) (en banc).

However, the conscience of this Court is not shocked that a man who was convicted of first degree murder, robbery, and assault to commit robbery, all while armed, and who is serving a life sentence with no release date in sight is kept only in a high-security, in-custody prison, rather than in a less secure prison or out-placement. Additionally, the Sixth Circuit "has recently expressed the view that '"[a]pplying the 'shock the conscience' test in an area other than excessive force . . . is problematic."'" *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1217 (6th Cir. 1992) (quoting *Cassady v. Tackett*, 938 F.2d 693, 698 (6th Cir. 1991); *see also Pusey v. City of Youngstown, et al.*, 11 F.3d 652, 657 (6th Cir. 1993), *cert. denied*, 114 S. Ct. 2742 (1994) (citing *Braley v. City of*

*Pontiac*, 906 F.2d 220, 224-225 (6th Cir. 1990)).

With regard to the petitioner's other claims, they will be dismissed as not having been exhausted, the dismissal, therefore, being without prejudice to his right to exhaust these issues with the BOP administratively and bring them again. This is not to say, however, that the Court encourages him to do so. Other petitioners' challenges to their classifications and custody levels, pursuant to P.S. 5100.07, have failed. *See Montalvo v. Snyder*, 84 Fed.Appx. 521, 523 (6th Cir. 2003 (unpublished) (affirming the decision of this Court to dismiss, the petitioner having failed to state a double jeopardy or *ex post facto* claim); *Johnson v. Daniels*, 2005 WL 221258 (D.Or. 2005) (only Westlaw currently available) (no liberty interest/due process claim in prison location or security classification or rehabilitation programs, and no cruel and unusual punishment claim stated); *Green v. Bureau of Prisons*, 2002 WL 31548084 (D. Minn. 2002) (no equal protection or *ex post facto* claim).

As the instant petitioner was told in his earlier §2241 petition, the equal protection clause requires that all persons similarly circumstanced shall be treated alike. *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985); *Canterino v. Wilson*, 546 F. Supp. 174, 206 (6th Cir. 1982) (quoting *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920)). The instant petitioner is similarly circumstanced to other D. C. prisoners and not similarly situated to non-D.C. prisoners. Even accepting the petitioner's own allegations as true, all D.C. prisoners are treated similarly to each other and differently from non-D. C. prisoners. There is no baseless inequity. The law is that an equal protection claim which is not supported by factual allegations is dismissable as being only conclusory. *See Blackburn v. Fisk University*, 443 F.2d 121 (6th Cir. 1971). Thus, this petitioner's equal protection claim would require dismissal. *See also, Green v. Bureau of Prisons*, 2002 WL

31548084 at **2 (no equal protection claim stated).

Finally, the Court notes that the petitioner refers to several documents as bases for his claims, including a purported congressional act in 1997, an operations manual, and a contract between D. C. officials and BOP officials. He does not provide the documents or language therefrom or any holding in case law which is grounded in these documents. When a plaintiff or petitioner generally alleges that he has been deprived of rights, privileges or immunities secured by federal law, but the petitioner/plaintiff nowhere identifies the substance of the alleged deprivation, such conclusory statements are insufficient to state a federal civil rights claim. *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994) (citing *See Ana Leon T. v. Federal Reserve Bank of Chicago*, 823 F.2d 928, 930 (6th Cir.), *cert. denied*, 484 U.S. 945 (1987)).

## CONCLUSION

Accordingly, **IT IS ORDERED** as follows:

(1) The instant petition for writ of habeas corpus is **DENIED,** *sua sponte*;

(2) the action will be dismissed from the docket of the Court, the due process claims **DISMISSED WITH PREJUDICE** and all of the remaining claims **DISMISSED WITHOUT PREJUDICE**; and

(3) Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of Respondent S. R. Hastings.

This the 3rd day of August, 2005.



**Signed By:**
*Karen K. Caldwell*
**United States District Judge**

10